## UNITED STATES v. TAVARES CONST. CO., Inc., et al.

## TAVARES CONST. CO., Inc., et al. v. UNITED STATES.

### No. 11820.

United States Court of Appeals
Ninth Circuit.

June 16, 1949.

Rehearing Denied Aug. 1, 1949.

John M. Martin, Frank L. Martin, Jr., Los Angeles, Cal., for appellant.

A. Devitt Vanech, Asst. Atty. Gen., James M. Carter, U. S. Atty., Los Angeles, Cal., C. U. Landrum, Sp. Asst. to Atty. Gen., Roger P. Marquis, George S. Swarth, Atty. Dept. of Just., Washington, D. C., for appellee.

Before MATHEWS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

MATHEWS, Circuit Judge.

In the United States District Court for the Southern District of California, the United States, hereafter called plaintiff, instituted a proceeding for the condemnation of land in National City, San Diego County, California. Plaintiff instituted this proceeding by filing a complaint on November 10, 1942. Thereby plaintiff sought condemnation of 11 parcels of land—parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11. On September 23, 1944, plaintiff filed an amendment to the complaint. By the complaint as thus amended, plaintiff sought condemnation of 12 parcels of land—the 11 parcels mentioned above and parcel A.

On October 3, 1944, plaintiff filed a dec-laration of taking and deposited with the court the amount ($116,540) estimated to be just compensation for parcels 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A.[1] On December 23, 1944, plaintiff filed an amended declaration of taking and deposited with the court the amount ($55,110) estimated to be just compensation for parcel 1.

Plaintiff filed an amended and supplemental complaint on January 15, 1945. Tavares Construction Company, Inc., Lloyd S. Stroud, R. S. Seabrook, C. M. Elliott, Carlos Tavares, Henry M. Page and Don F. Gates, hereafter called Constructors,[2] filed an answer on May 4, 1945. There was a trial in February, 1947. A judgment was entered on June 6, 1947. A motion of Constructors for a new trial was denied on July 29, 1947. Three appeals were taken—one by plaintiff and two by Constructors.

■ Plaintiff's appeal is from an alleged order modifying the judgment. Actually, there was no such order. Plaintiff's appeal is therefore dismissed.

■ One appeal of Constructors is from the order denying the motion for a new trial.[3] That was not an appealable order.[4] The appeal from it is therefore dismissed.

The other appeal of Constructors is, according to their notice of appeal,[5] "from those portions of the judgment * * * adjudicating issues between the plaintiff and [Constructors]." The judgment contained 14 paragraphs. The ones which adjudicated issues between plaintiff and Constructors were paragraphs 9, 10 and 11. They were as follows:

"9. That pursuant to declaration of taking No. 1 filed by plaintiff herein on October 3, 1944, there became vested in [plaintiff] on said date the full and indefeasible

---

[1] See 40 U.S.C.A. § 258a.

[2] Tavares Construction Company, Inc., Lloyd S. Stroud, R. S. Seabrook, C. M. Elliott, Carlos Tavares, Henry M. Page and Don F. Gates were joint adventurers doing business under the name Concrete Ship Constructors. Lloyd S. Stroud and R. S. Seabrook were partners doing business under the name Stroud-Seabrook.

[3] Constructors' notice of appeal reads as follows: "Notice is hereby given that [Constructors] hereby appeal to the United States Circuit Court of Appeals for the Ninth Circuit from those portions of the judgment entered in this action on June 6, 1947, adjudicating issues between the plaintiff and [Constructors], but not from any portion thereof adjudicating issues between [Constructors] and any of the other defendants, and from the order denying the motion of [Constructors] for a new trial entered in this action July 29, 1947."

[4] Bass v. Baltimore & Ohio Terminal R. Co., 7 Cir., 142 F.2d 779.

[5] See footnote 3.

fee simple title to the said parcels 2, 3, 5, 6, 7, 8, 9 and A, including all improvements, facilities and fixtures located thereon; that pursuant to the amended declaration of taking filed by plaintiff herein on December 23, 1944, there became vested in [plaintiff] on said date the full and indefeasible fee simple title to said parcel 1, including all improvements, facilities and fixtures located thereon.

"10. That the just compensation for the condemnation and taking by plaintiff of all right, title and interest of [Constructors] in and to the real property designated as parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A and hereinafter described,[6] and all improvements, facilities and fixtures located thereon, and the option, leasehold and possessory rights granted to [Constructors], or any of them, by that certain lease and agreement dated December 27, 1941, between Defense Plant Corporation and Tavares Construction Company, Inc., as amended (commonly known as Plancor 407, as amended), is nothing.

"11. That all right, title and interest of [Constructors] in and to the real property designated as parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A and hereinafter described, and all improvements, facilities and fixtures located thereon, and the option, leasehold and possessory rights granted to [Constructors], or any of them, by that certain lease and agreement dated December 27, 1941, between Defense Plant Corporation and Tavares Construction Company, Inc., as amended (commonly known as Plancor 407, as amended), have become and are hereby vested in [plaintiff]."

Parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A were the only property condemned or taken in this proceeding. Parcels 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A were condemned and taken on October 3, 1944, when the first declaration of taking was filed. There was no evidence that Constructors, or any of them, had any estate or interest in parcels 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A, or any of them, on October 3, 1944.

Parcel 1 was condemned and taken on December 23, 1944, when the amended declaration of taking was filed. There was no evidence that Constructors, or any of them, had any estate or interest in any part of parcel 1 on December 23, 1944, except the part hereafter called the site. There was no evidence that Constructors, or any of them, had any estate or interest in the site on December 23, 1944, except that which they acquired under and by virtue of an agreement between Defense Plant Corporation and Tavares Construction Company, Inc., dated December 27, 1941, hereafter called Plancor 407,[7] the pertinent portions of which were as follows:

"Whereas, the Maritime Commission[8] has advised that the construction of concrete barges and the expansion of facilities within the United States for such construction are essential to the National Defense Program; and

"Whereas, the Maritime Commission has advised that for such construction the establishment of additional facilities (such facilities including building slips, tracks, outfitting docks, buildings, and other structures and improvements, being hereinafter sometimes called the 'Facilities'), at National City, California, and the acquisition of additional machinery and equipment for use in connection with said Facilities and Lessee's[9] existing facilities (such machinery and equipment, including cranes and other types of movable equipment, but exclusive of items commonly classified as expendable items, being hereinafter sometimes

---

[6] A description of parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A was attached to and made a part of the judgment.

[7] Constructors other than Tavares Construction Company, Inc., were not parties to Plancor 407. It is conceded, however, that all rights acquired by Tavares Construction Company, Inc., under or by virtue of Plancor 407 were acquired and held by it for all the Constructors—Tavares Construction Company, Inc., Lloyd S. Stroud, R. S. Seabrook, C. M. Elliott, Carlos Tavares, Henry M. Page and Don F. Gates.

[8] The United States Maritime Commission caused this proceeding to be instituted. See 50 U.S.C.A. § 171a; 50 U.S. C.A.Appendix, § 632; Executive Order No. 9129, 7 F.R. 2810, 50 U.S.C.A.Appendix, § 632 note.

[9] In Plancor 407, Defense Plant Corporation was called Defense Corporation and Tavares Construction Company, Inc., was called Lessee.

called the 'Machinery'), are in its opinion necessary in the interest of national defense; and

"Whereas, Lessee [10] has leased or proposes to lease a site at National City, California, consisting of approximately six (6) acres of land suitable for the location of such additional Facilities (hereinafter called the 'Site'); [11] * * *

"Now, therefore, in consideration of the mutual covenants herein contained, it is agreed by and between the parties hereto as follows:

"One: Lessee agrees forthwith upon the execution of this agreement to assign or cause to be assigned to Defense Corporation [12] all of its right, title and interest in and to the lease covering the Site * * *

"Twelve: Subject to termination upon the terms hereinafter in this paragraph Twelve provided, Defense Corporation hereby agrees to sublease the Site and to lease the Facilities and Machinery * * * to Lessee and Lessee does hereby lease and sublease the same from Defense Corporation for a term ending December 31, 1947, which term, upon its expiration, shall be automatically extended, subject to similar termination, for an additional period ending December 31, 1949. Defense Corporation and Lessee each agrees, upon the written request of the other, to execute and deliver such additional instruments of lease as may be necessary to carry out the provisions of this agreement. This lease or any extension thereof under this paragraph Twelve may be terminated by the parties hereto * * *

"Fourteen: Defense Corporation, by notice in writing with the approval of the Maritime Commission noted thereon, may, in addition to all other rights with reference to termination under paragraph Twelve hereof, cancel this lease or extension thereof, in the event (a) all or substantially all of Lessee's contracts with the Government, [13] at any time outstandng, for the construction of concrete barges and other boats shall be terminated or canceled prior to completion * * *

"Fifteen: Upon the expiration or termination of this lease or extension thereof pursuant to paragraph Twelve hereof, or upon cancelation of this lease or extension thereof pursuant to clause (a) of paragraph Fourteen hereof (unless such cancelation shall have been effected because of a violation by Lessee of the contracts referred to in said clause (a) ), Lessee shall have and is hereby granted, for a period of ninety (90) days after such termination, expiration, or cancelation (hereinafter referred to as the 'Option Period') the right and option, by written notice to Defense Corporation and to the Maritime Commission, to purchase all but not part of the Site, Facilities and Machinery [14] * * * "

Pursuant to Plancor 407, Tavares Construction Company, Inc., obtained from the City of National City and assigned to Defense Plant Corporation a lease which covered parcel 1 [15] and therefore covered the site, the site being a part of parcel 1. The lease was dated January 1, 1942, was executed on February 2, 1942, and was for a term ending December 31, 1946, with the right (granted to the lessee) of extending the term to December 31, 1961. The assignment was dated January 30, 1942, and was executed on that date. Thus, under and by virtue of Plancor 407, Defense Plant Corporation acquired a leasehold estate in parcel 1.

Upon the execution of the lease dated January 1, 1942, and the assignment dated January 30, 1942, the sublease mentioned in

---

[10] See footnote 9.

[11] The evidence showed that the site was a part of parcel 1.

[12] See footnote 9.

[13] Tavares Construction Company, Inc., and others had several contracts with the Maritime Commission, but, so far as the record shows, never had any contract with the Government.

[14] Plancor 407 was amended by agreements dated April 13, 1942, July 1, 1942, July 29, 1942, August 12, 1942, November 11, 1942, and March 9, 1943, but the above quoted portions of Plancor 407 remained unchanged.

[15] The land covered by the lease was not called parcel 1 in the lease, but was described therein. A description of parcel 1 was annexed to the amended declaration of taking. It is apparent from a comparison of these descriptions that the land covered by the lease was parcel 1.

paragraph Twelve of Plancor 407 and the lease mentioned in paragraphs Twelve, Fourteen and Fifteen of Plancor 407 became effective. Thus, under and by virtue of Plancor 407, Tavares Construction Company, Inc., for itself and the other Constructors,[16] acquired a leasehold estate in the site. Also, under and by virtue of Plancor 407, Tavares Construction Company, Inc., for itself and the other Constructors, acquired the option mentioned in paragraph Fifteen of Plancor 407. Except as indicated above, Constructors did not, nor did any of them, acquire any estate or interest in the site under or by virtue of Plancor 407.[17]

The sublease mentioned in paragraph Twelve of Plancor 407 and the lease mentioned in paragraphs Twelve, Fourteen and Fifteen of Plancor 407 were in effect on December 23, 1944, when the amended declaration of taking was filed. In compliance with 40 U.S.C.A. § 258a, the amended declaration of taking had annexed to it a description of the property thereby taken and contained a statement of the estate or interest in said property thereby taken. The description annexed to the amended declaration of taking described 12 parcels of land—parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A.[18] The statement contained in the amended declaration of taking was in part, as follows:

"Now, therefore, [plaintiff] and the United States Maritime Commission [19] * * * declare that the land * * * and the fee simple title thereto are hereby taken * * * and the estate hereby taken in said land * * * is in fee simple absolute, excepting, however, all of the right, title and interest of [plaintiff] or its agent, Defense Plant Corporation, in and to said real estate, including all improvements and fixtures located thereon or in any way appertaining thereto, which have heretofore vested in [plaintiff] or its agent, Defense Plant Corporation, by virtue of the following instruments: agreement [Plancor 407] dated December 27, 1941, between the Defense Plant Corporation and the Tavares Construction Company, Inc., * * * lease agreement dated January 1, 1942, between the City of National City and the Tavares Construction Company, Inc., and assignment thereof to the Defense Plant Corporation dated January 30, 1942,[20] * * *".

■ Thus the amended declaration of taking showed that the estate or interest in parcel 1 condemned and taken in this proceeding did not include the leasehold estate in parcel 1 acquired by Defense Plant Corporation under and by virtue of Plancor 407. Constructors' leasehold estate in the site was part of the leasehold estate in parcel 1 so acquired by Defense Plant Corporation. Hence Constructors' leasehold estate in the site was not condemned or taken in this proceeding.

■ The option mentioned in paragraph Fifteen of Plancor 407 purported to be an option to purchase from Defense Plan Corporation the site and the facilities and machinery located on the site. Some of the facilities and machinery located on the site were personal property. Some were real property, which is to say, they were part of the site. On and prior to December 23, 1944,[21] Defense Plant Corporation owned, and could have sold, the facilities and machinery which were located on the site and were personal property, but it did not own, and hence could not have sold, the site or any part of the site. It had, and could

---

[16] See footnotes 2 and 7.

[17] Whether the option mentioned in paragraph Fifteen of Plancor 407 was an estate or interest in the site we need not and do not decide.

[18] The description of parcels 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A was superfluous, as those parcels were condemned and taken on October 3, 1944, when the first declaration of taking was filed. Parcel 1 was the only property condemned or taken on December 23, 1944.

[19] See footnote 8.

[20] The other "instruments" mentioned in the amended declaration of taking were agreements between the Maritime Commission and Tavares Construction Company, Inc., and others dated November 27, 1941, June 30, 1942, October 26, 1943, and November 30, 1943, none of which vested in plaintiff or Defense Plant Corporation any estate or interest in parcel 1.

[21] The date on which parcel 1, including the site, was condemned, and taken.

384

have sold, a leasehold estate in the site, but it did not have, and hence could not have sold, any other estate or interest therein. Therefore the option mentioned in paragraph Fifteen of Plancor 407 was, in reality, merely an option to purchase from Defense Plant Corporation (1) its leashold estate in the site and (2) the fac ilities and machinery which were located on the site and were personal property.

It is here contended that the option mentioned in paragraph Fifteen of Plancor 407 was condemned and taken in this proceeding. The contention assumes that Defense Plant Corporation's leasehold estate in the site was condemned and taken in this proceeding;[22] that such condemnation and taking made it impossible for Defense Plant Corporation to sell its leasehold estate in the site; and that such condemnation and taking was, therefore a condemnation and taking of the option. Actually, as shown above, there was no condemnation or taking of Defense Plant Corporation's leasehold estate in the site. There was, therefore, no condemnation or taking of the option.

Summarized, our conclusions are that parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A were the only property condemned or taken in the proceeding; that parcels 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A were condemned and taken on October 3, 1944, when the first declaration of taking was filed; that Constructors (Tavares Construction Company, Inc., Lloyd S. Stroud, R. S. Seabrook, C. M. Elliott, Carlos Tavares, Henry M. Page and Don F. Gates) did not, nor did any of them, have any estate or interest in parcels 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and A, or any of them, on October 3, 1944; that parcel 1 was condemned and taken on December 23, 1944, when the amended declaration of taking was filed; that Constructors did not, nor did any of them, have any estate or interest in any part of parcel 1 on December 23, 1944, except the part herein called the site; that Constructors did not, nor did any of them, have any estate or interest in the site on December 23, 1944, except that which they acquired under and by virtue of Plancor 407 (the agreement between Defense Plant Corporation and Tavares Construction Company, Inc., dated December 27, 1941); that under and by virtue of Plancor 407, Tavares Construction Company, Inc., for itself and the other Constructors, acquired a leasehold estate in the site and acquired the option mentioned in paragraph Fifteen of Plancor 407; that Constructors did not, nor did any of them, acquire any other estate or interest in the site under or by virtue of Plancor 407; that said leasehold estate and said option were not, nor was either of them, condemned or taken in this proceeding; and that, therefore, Constructors were not, nor was any of them, entitled to compensation for any property condemned or taken in this proceeding or for any estate or interest therein.

Paragraphs 9, 10 and 11 of the judgment are vacated, and the case is remanded to the District Court with directions to enter judgment in conformity with this opinion.

---

[22] There is no contention, nor any basis for contending, that the facilities and machinery which were located on the site and were personal property were condemned or taken in this proceeding.